CLERK'S OFFICE
A TRUE COPY
Dec 08, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
*(Address or brief description of property or premises to be seized)*

ALL BITCOIN (BTC) CURRENTLY ASSOCIATED WITH
THE FOLLOWING FIVE CHANGENOW VIRTUAL
CURRENCY ADDRESSES:
    (1) 35yB1iLRnuYVrJWYaZFk7DuvSjxgx3qvJV
    (2) 3Py8onX89WJM3fhKM4FcayKn9Hnt8uyiYT
    (3) 34miQvY6azsdhSZCcabCD1AomXpefim2j2
    (4) 34YMPXKP9oxSyg8n5Zos2e7EdXGU3DjrmK
    (5) 3AQWTq67e276zyR7bpVjFLM3oWwBRzS5fX

Case Number:    25     MJ     209

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

**TO:**     **BETH ITNYRE, a Task Force Agent with the United States Secret Service, and any Authorized Officer of the United States**.

An application by a federal law enforcement officer or an attorney for the government requests that certain property be seized as being subject to forfeiture to the United States of America. The property is described as follows:

    All Bitcoin (BTC) currently associated with the following five ChangeNOW virtual currency addresses: 35yB1iLRnuYVrJWYaZFk7DuvSjxgx3qvJV, 3Py8onX89WJM3fhKM4FcayKn9Hnt8uyiYT, 34miQvY6azsdhSZCcabCD1AomXpefim2j2, 34YMPXKP9oxSyg8n5Zos2e7EdXGU3DjrmK, and 3AQWTq67e276zyR7bpVjFLM3oWwBRzS5fX

I find that the affidavit and any recorded testimony establish probable cause to seize the property.

**YOU ARE HEREBY COMMANDED** to search on or before        12/22/2025       
                                                             *(not to exceed 14 days)*

         ❑ in the daytime – 6:00 a.m. to 10:00 p.m.      ☑ at any time in the day or night, as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to United States Magistrate Judge William E. Duffin.

       ❑ I find that immediate notification may have an adverse result listed in 18 U.S.C. §2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person, who, or whose property, will be searched or seized *(check the appropriate box)*      ❑ for _____ days. *(not to exceed 30)*
                                              ❑ until, the facts justifying, the later specific date of _____

Date and time issued: 12/8/2025  11:20 a.m.

City and State: Milwaukee, Wisconsin

*Judge's signature*

THE HONORABLE WILLIAM E. DUFFIN
United States Magistrate Judge
*Name & Title of Judicial Officer*

## RETURN

| Date Warrant received | Date and time Warrant executed | Copy of warrant and receipt for items left with |
|---|---|---|
| | | |

Inventory made in the presence of

Inventory of property seized pursuant to the Warrant

## CERTIFICATION

I swear that this inventory is a true and detailed account of the property seized by me on the warrant.

_____

Subscribed, sworn to, and returned before me on this date.

_____          _____
U.S. Judge or Magistrate Judge                              Date

CLERK'S OFFICE
A TRUE COPY
Dec 08, 2025
s/MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin



# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

ALL BITCOIN (BTC) CURRENTLY ASSOCIATED WITH
THE FOLLOWING FIVE CHANGENOW VIRTUAL
CURRENCY ADDRESSES:
    (1) 35yB1iLRnuYVrJWYaZFk7DuvSjxgx3qvJV
    (2) 3Py8onX89WJM3fhKM4FcayKn9Hnt8uyiYT
    (3) 34miQvY6azsdhSZCcabCD1AomXpefim2j2
    (4) 34YMPXKP9oxSyg8n5Zos2e7EdXGU3DjrmK
    (5) 3AQWTq67e276zyR7bpVjFLM3oWwBRzS5fX

Case Number:    25   MJ   209

### APPLICATION FOR A WARRANT
### TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Beth Itnyre, being duly sworn depose and say:

I am a Task Force Agent with the United States Secret Service, and have reason to believe that in Saint Vincent and the Grenadines (SVG) there is now certain property, namely, all Bitcoin (BTC) currently associated with the above-captioned five ChangeNOW virtual currency addresses, that is civilly forfeitable under 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and criminally forfeitable under 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) in conjunction with 28 U.S.C. § 2461(c), as (1) funds traceable to, and therefore proceeds of, specified unlawful activity, namely, wire fraud in violation of 18 U.S.C. § 1343; and (2) funds involved in, or traceable to funds involved in, money laundering transactions in violation of 18 U.S.C. §§ 1956, 1957 and 1960, and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

The application is based on these facts:

    ✓ Continued on the attached sheet.
    ❑ Delayed notice of _____ days (give exact ending date if more than 30 days:_____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet).

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone and email.

    12/08/2025 at 11:20 a.m.
_____
Date and time issued

_____
Signature of Affiant
Beth Itnyre, USSS

at Milwaukee, Wisconsin
City and State

William E. Duffin, U.S. Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEIZURE WARRANT

I, Beth Itnyre, being duly sworn, do hereby depose and state:

## FUNDS TO BE SEIZED

1.      I submit this affidavit in support of an application for a warrant to seize all Bitcoin (BTC) on deposit in the following five ChangeNOW Bitcoin Blockchain addresses:

   a. **35yB1iLRnuYVrJWYaZFk7DuvSjxgx3qvJV**   **1.0 Bitcoin (TARGET ADDRESS #1)**
   b. **3Py8onX89WJM3fhKM4FcayKn9Hnt8uyiYT**   **1.0 Bitcoin (TARGET ADDRESS #2)**
   c. **34miQvY6azsdhSZCcabCD1AomXpefim2j2**   **1.0 Bitcoin (TARGET ADDRESS #3)**
   d. **34YMPXKP9oxSyg8n5Zos2e7EdXGU3DjrmK**   **1.0 Bitcoin (TARGET ADDRESS #4)**
   e. **3AQWTq67e276zyR7bpVjFLM3oWwBRzS5fX**   **1.0 Bitcoin (TARGET ADDRESS #5)**

2.      For reasons set forth below, I submit that probable cause exists to believe that all BTC held on deposit in the Bitcoin Blockchain addresses noted above are:

   a.   Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses committed in violation of 18 U.S.C. § 1343, and therefore subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

   b.   Funds involved in, or traceable to funds involved in, money laundering offenses, committed in violation of 18 U.S.C. §§ 1956 and 1957, and therefore are subject to civil forfeiture under 18 U.S.C. §§ 981 (a)(1)(A) and 984, and subject to criminal forfeiture under 18 U.S.C. § 982(a)(1); and

   c.   Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

## BACKGROUND, TRAINING, AND EXPERIENCE

3.      I am a Detective with the City of Wauwatosa Police Department and have been employed as a law enforcement officer since December, 2006.  I am currently assigned to the United States Secret Service Milwaukee Resident Office Financial Crimes Task Force ("MFCTF").  I was federally deputized in February of 2024.  My duties as a Detective and Task Force Agent with the Secret Service include investigating financial crimes, such as identity fraud, check fraud, credit card fraud, bank fraud, wire fraud, and money laundering.  Many of these include the use of cryptocurrency.

4.      As a Detective and Task Force Agent, I have conducted investigations into wire fraud, money laundering, and other complex financial crimes.  In the course of those investigations, I have used various investigative techniques, including reviewing physical and electronic evidence, obtaining and reviewing financial records, and working with cooperating sources of information.  In the course of those investigations, I have also become familiar with techniques that criminals use to conceal the nature, source, location, ownership, and control of proceeds of crime and to avoid detection by law enforcement of their underlying acts and money laundering activities.

5.      During my tenure as a law enforcement officer, I have been involved in the investigation of wire fraud and multiple variations of online computer fraud in Milwaukee County, in the State of Wisconsin, across the United States, and internationally. I have received training in the investigation of wire fraud, money laundering, and computer crimes. My training and experience include the following:

   a. I am a member of the International Association of Financial Crime Investigators (IAFCI) and have received formal training in the use of cryptocurrencies by persons involved in fraud investigations and have an understanding of how cryptocurrencies work.

   b. I know that persons involved in wire fraud and internet scams often attempt to protect

2

and conceal proceeds through money laundering, including but not limited to domestic and international banks, securities brokers, service professionals, casinos, real estate, shell corporations, business fronts, and otherwise legitimate businesses that generate large quantities of currency. I know that it is common for online fraudsters to obtain, secrete, transfer, conceal, or spend fraud proceeds using digital currency, also known as cryptocurrency.

c. Digital currency is generally defined as an electronic sourced unit of value, which can substitute for fiat currency. Digital currency exists entirely on the Internet and is not stored in any physical form. Digital currency is generally not issued by any government, bank, or company and is instead generated and controlled through computer software operating on a decentralized peer-to-peer network.

d. There are various types of digital or cryptocurrency. Cryptocurrency payments are recorded on the blockchain, a public ledger, maintained by peer-to-peer verification and is, therefore, not generally maintained by a single administrator or entity. Individuals can generally acquire cryptocurrency either by "mining" or by purchasing from other entities. An individual can "mine" for some types of cryptocurrency (Bitcoin) by allowing his computing power to verify and record the Bitcoin payments into a public ledger. Individuals are rewarded for this by receiving newly-created Bitcoin. An individual can send and receive Bitcoin through peer-to-peer digital transactions or by using a third-party broker. Such transactions can be performed on any type of computer.

e. Cryptocurrency is stored in digital "wallets." A digital wallet essentially stores the access code that allows an individual to conduct bitcoin transactions on the public ledger. To access Bitcoin on the public ledger, an individual must use a public address (or "public key") and a private address (or "private key"). The public address is similar to an account number while the private key is similar to an account password. Even though the public addresses of transactors are recorded on the public ledger, the true identities of the individuals or entities behind the public addresses are not recorded. If, however, a real individual or entity is linked to a public address, an investigator could determine what transactions were conducted by that individual or entity. Cryptocurrency transactions are, therefore, described as "pseudonymous," or partially anonymous.

f. An exchange cryptocurrency account has multiple "wallets," sub-accounts, or sub-wallets for holding different currency (e.g., U.S. dollars, Bitcoin, Dogecoin, TetherUS, Bitcoin Cash, Bitcoin Gold), but all of the sub-wallets are within one account. The funds can be readily moved from one currency to another currency within the same

3

account. The value of the cryptocurrency relative to the U.S. dollar is constantly fluctuating. Many cryptocurrency wallet companies allow the account holder to control the "private key" for each wallet and that "private key" is needed to transfer or remove funds. However, most exchanges control the "private key" to each of the wallets on its platform.

g. Online fraudsters often use enhanced cryptocurrency to protect their identities, launder money, and conceal drug proceeds, because of the anonymity provided by cryptocurrency. Most cryptocurrency is a decentralized digital currency without a central bank or single administrator. Payments are sent from user-to-user on the peer-to-peer bitcoin network without the need for intermediaries. These services add layers of anonymity to financial transactions to evade law enforcement.

h. I know that persons involved in online fraud often use cryptocurrencies as a way of moving stolen funds very rapidly through electronic transfers into various crypto wallets. I know that cryptocurrencies are generally not backed by any government entity and that cryptocurrency is an international form of payment accepted throughout the world in the same format. For this reason, fraudsters can move large amounts of stolen funds internationally very rapidly in a digital universal format. Once the stolen funds are moved, commingled with other funds, and concealed, those funds can then be transferred to other forms of cryptocurrency or into fiat currency making it challenging for law enforcement to trace.

6. This affidavit is based upon my personal knowledge and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, I refer to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and whom I believe to be truthful and reliable.

7. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8. I submit that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the funds for forfeiture because I have been advised of cases in which, even after a restraining order or similar process has been issued to financial institution, the funds sought to

4

be restrained were not effectively restrained by the financial institution. In my judgment, a seizure warrant would be the most effective way to assure the availability of the money sought to be seized for forfeiture by the accompanying seizure warrant.

## CRYPTOCURRENCY DEFINITIONS

9. **"Blockchain"** means an electronic record created by the use of a decentralized method by multiple parties to verify and store a digital record of transactions which is secured by the use of a cryptographic hash of previous transaction information.

10. **"Crytpograhpic or transaction hash"** means a mathematical algorithm which performs a one-way conversion of input data into output data of a specified size to verify the integrity of the data.

11. **"Electronic"** means relating to technology having electrical, digital, magnetic, wireless, optical, electromagnetic, or similar capabilities.

12. **"Electronic record"** means a record created, generated, sent, communicated, received, or stored by electronic means, including a blockchain or a smart contract.

13. **"Record"** means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

14. **"Smart contract"** means a contract stored as an electronic record which is verified by the use of a blockchain.

15. **"Cryptocurrency"** means a type of virtual currency, generally in a decentralized, peer-to-peer network medium of value or exchange that may be used as a substitute for fiat currency to buy goods or services, or exchanged for fiat currency or other cryptocurrencies. Individuals can obtain cryptocurrency through exchanges and other intermediaries, person-to-person transfers, the sale of goods or services, or mining. There are thousands of cryptocurrencies including Bitcoin

5

("BTC"), Ether ("ETH"), Tether ("USDT"), and USD Coin (USDC).

16.    **"Cryptocurrency exchange"** means a business that allows customers to trade cryptocurrencies or digital currencies for other assets, such as conventional fiat money or other digital currencies. Exchanges may accept credit card payments, wire transfers or other forms of payments in exchange for digital currencies or cryptocurrencies.

17.    **"Fiat currency"** means coin and paper money of a country that has legal tender.

18.    **"Blockchain analysis"** means the process of inspecting, identifying, clustering, modeling and visually representing data on a cryptographic, distributed-ledger known as a Blockchain. Data in most Blockchains is public, meaning anyone can view the contents. The goal of Blockchain analysis is discovering useful information about the different actors transacting in cryptocurrency by using open source and/or subscription analytical tools, such as "Chainalysis" to determine what transactions were conducted by that individual or entity. Cryptocurrency transactions are sometimes referred to a "pseudonymous", meaning that they are partially anonymous.

19.    **"Wallet"** means a software program that interfaces with the Blockchain and generates and stores public and private keys used to send and receive cryptocurrencies. A wallet can have one or more cryptocurrency address(es) that are controlled by the same individual or entity.

- **Custodial Wallet**: Also known as hosted – where the wallet provider, as opposed to the owner of the cryptocurrency, keeps custody of the public and private keys on the wallet owner's behalf.

- **Non-Custodial Wallet**: Also known as un-hosted or self-hosted – where the wallet owner has sole access to the private keys which are stored offline.

20.    **"Cryptocurrency Address"** means a public address, which is represented as a case-sensitive string of letters and numbers, is akin to a bank account number, and a private key is a

6

cryptographic equivalent of a Personal Identification Number (PIN) or password. Although cryptocurrencies such as Bitcoin, Ether, and Tether have legitimate uses, cryptocurrency is also used by individuals and organizations for criminal purposes such as money laundering and is often used as payment for illegal goods and services. By maintaining multiple address and/or wallets, those who use cryptocurrency for illicit purposes can attempt to thwart law enforcement's efforts to track transactions.

21.    **"Private Key"** is the cryptographic equivalent of a Personal Identification Number (PIN) or password. To access and transfer value associated with a public key or address on a Blockchain, an individual must use the public key or address and its unique corresponding private key. The value lies in the private key because whoever controls the private key controls any value associated with the corresponding cryptocurrency public address. While private keys are initially generated by a user's wallet software, they can be copied and stored in various locations.

## BACKGROUND ON CRYPTOCURRENCY & TRANSACTION ANALYSIS

22.    Cryptocurrency is circulated over the Internet. Generally speaking, cryptocurrency, is not issued by any government, bank, or company, but rather is controlled through computer software operating via a decentralized, peer-to-peer network.

23.    Cryptocurrency can be exchanged directly, person to person, through a cryptocurrency exchange, or through other intermediaries. Cryptocurrency is sent and received from cryptocurrency "addresses." A cryptocurrency address is somewhat analogous to a bank account number and is represented as a case-sensitive string of letters and numbers. Each cryptocurrency address is controlled through the use of a unique corresponding private key. This key is the cryptographic equivalent of a password or PIN and is necessary to access the cryptocurrency address. Only the holder of an address' private key can authorize any transfers of cryptocurrency from that address to

7

other cryptocurrency addresses. The individual or entity who holds the private key for a cryptocurrency address is, therefore, considered the "owner" of the address. Users can operate multiple cryptocurrency addresses at any given time and may use a unique cryptocurrency address for each and every transaction. Users often combine multiple cryptocurrency addresses (and their corresponding private keys) in a single logical unit known as a cryptocurrency "wallet."

24.     Although cryptocurrencies such as Bitcoin (BTC), Tether (USDT), and USD Coin (USDC) have legitimate uses, cryptocurrency is often used by individuals and organizations for criminal purposes such as money laundering. By maintaining multiple wallets, those who use cryptocurrency for illicit purposes can attempt to thwart law enforcement's efforts to track proceeds of illicit activities. Although it's not completely anonymous, Bitcoin allows users to transfer funds more anonymously than would be possible through traditional banking and financial systems.

25.     While a cryptocurrency address itself does not generally reveal the address' owner (unless the owner opts to make information about the owner's cryptocurrency address publicly available), the Blockchain is an open, distributed ledger that records transactions of a particular cryptocurrency between two addresses efficiently and in a verifiable and permanent way. Investigators can sometimes use the Blockchain to identify the owner of a particular cryptocurrency address or identify cryptocurrency addresses that likely all belong to the same owner. For example, because the Blockchain serves as a searchable public ledger of every transaction, investigators can trace transactions to other addresses, including cryptocurrency exchanges and cryptocurrency payment processors.

26.     Investigators may cluster cryptocurrency addresses believed to be held by the same owner for the purposes of Blockchain analysis into a single "merge wallet." Two ways that analysts determine that multiple addresses are likely under the control of the same owner are called "co-

8

spending" and "change address analysis." "Co-spending" is when a number of Bitcoin addresses are all used to send bitcoin in a single transaction. This indicates that a single owner holds the private keys for all those addresses. "Change address analysis" identifies addresses operating as "change addresses" for a particular account owner. Each Bitcoin transaction requires that all the Bitcoin at a given address be sent to new addresses. If the owner of the Bitcoin wants to spend less than the complete amount of Bitcoin held at one of their addresses, they send the excess Bitcoin to a new address for which they also hold the private key, called a "change address." Change addresses are therefore likely held by the same owner as the original Bitcoin address.

27. Investigators may utilize blockchain analytics tools while tracing cryptocurrency. The analytics tools utilize the blockchain as the foundation of their software, leveraging intelligence and factors like "co-spending" to create clusters. All tracing conducted using blockchain analytics tools is independently verified using open-source wallet explorers that are available on the internet. The wallet explorers only show data as seen on the blockchain and do not include any analytical features.

**BACKGROUND ON CHANGENOW**

28. CHNGroup LLC, dba ChangeNOW is a non-custodial cryptocurrency exchange platform emphasizing digital asset swaps. A user will transfer cryptocurrency into the ChangeNOW platform to have it swapped to another cryptocurrency token and have it immediately transferred to an external address of the user's choosing. The user does not create an account with ChangeNOW and is not asked to provide any identifying information known as "Know Your Customer" (KYC). ChangeNOW is listed at the address, Euro House, Richmond Hill Road, Kingstown, Saint Vincent, and the Grenadines.

9

## CRYPTOCURRENCY TRACING – BLOCKCHAIN ANALYSIS

29.     Throughout this investigation, Greenfield Police Detective Scott Simons conducted blockchain analysis of the many victim transactions.  Det. Simons has been employed as a law enforcement officer with the State of Wisconsin for 23 years.  Det. Simons was a federally deputized task force officer with the Drug Enforcement Administration from 2013 to 2023 investigating transnational drug trafficking and money laundering organizations throughout dozens of countries resulting in the seizure of illicit proceeds in excess of $20 million, to include millions of dollars' worth of cryptocurrency.  Det. Simons has received hundreds of hours' worth of cryptocurrency training and has trained federal, state, local, and foreign law enforcement in cryptocurrency and cyber investigations.  Det. Simons is currently assigned to the Midwest Cryptocurrency Task Force and a team leader with Operation Shamrock, which is a public and private sector collaboration aimed at investigating and assisting victims involved with cryptocurrency related fraud.  Case agents used multiple tools to trace the stolen cryptocurrency.  Case agents have found these tools to be reliable in the past, and all work was manually verified.

## PROBABLE CAUSE

### KENOSHA, WISCONSIN VICTIM

30.     On May 4, 2025, Kenosha, Wisconsin victim resident, P.W., reported being victimized to the Kenosha Police Department.  P.W. received a text message about a fraudulent Amazon transaction.  P.W. called the phone number and spoke with a purported FBI Agent David Black.  David Black instructed P.W. to secure her money by buying $1,500 in gift cards which she did and also by buying $10,000 worth of Bitcoin.  On May 2, 2025, P.W. deposited $10,000 U.S. currency into an Athena Bitcoin kiosk located in Pleasant Prairie, Wisconsin and transferred it as directed by the scammer to Bitcoin address bc1q8kyc06y76utt8tpsm3emhzj3wvj2nmzn5f029z.  After Athena

Bitcoin retained a portion of the funds as a transaction fee, a total of 0.07260706 BTC ($7,020) was transferred to the scammer's initial Bitcoin address. The Bitcoin was traced through a series of four different addresses to include the total amount being split up and being combined again. On May 10, 2025, all of this victim's Bitcoin was deposited into consolidation Bitcoin address #2 1C6w4hZfMCo8u5JQ1RSzK159Juu49HK5cf (consolidation Bitcoin address #2), via transaction hash 72862acaebbc43ea86c485381fa186eaab25ff3e9f7a5c4911cc6bb1a16ce65c. A consolidation address is used by criminals to combine illicit funds from various victims prior to transferring it all together. Case agents believed the funds may eventually be transferred to the swapping service ChangeNOW, and as a result, requested ChangeNOW to freeze any future cryptocurrency originating from consolidation Bitcoin address #2.

<u>WRIGHT CITY, MISSOURI VICTIM</u>

31.     On May 12, 2025, case agents learned that the St. Louis (Missouri) Fusion Center was assisting the Warren County Sheriff's Office investigate a related scam. On May 6, 2025, Wright City, Missouri victim resident, C.M., reported making a purchase online. C.M. received an email purportedly from PayPal indicating a greater charge than what was authorized. C.M. called the phone number listed in the "PayPal" email and was informed this was a fraudulent charge. C.M. was forwarded to someone claiming to be Federal Trade Commission Agent David Black with a direct phone number (202) 660-9196. C.M. was told she was now a suspect in a federal money laundering act and must prove her innocence by transferring funds to the "Criminal Justice Virtual Wallet" without notifying her bank. C.M. and her husband withdrew U.S. currency from their bank account and deposited a total of $19,100 between May 9, 2025 and May 10, 2025 into three cryptocurrency kiosks (Athena and Bitcoin Depot). After the transaction fees were retained by Bitcoin Depot and Athena Bitcoin, a total of 0.13134156 BTC ($13,615.00) was transferred to BTC address

11

bc1qpq7zglwqcmz2khxce9xdewkxaq0jtadkeeehv2.  On the same day of May 10, 2025, the funds were transferred through one more Bitcoin address and deposited into consolidation Bitcoin address #2.

32.     On May 11, 2025, consolidation Bitcoin address #2 held approximately 6.797734 BTC valued at approximately $712,273 USD.  Blockchain analytics tools have identified at least $301,097 USD originating from cryptocurrency kiosks being deposited in this consolidation address #2, which is consistent with these victims, and as a result, is believed to be from other victims.  The $301,097 USD is derived from only previously known Bitcoin addresses belonging to cryptocurrency kiosks, so the actual amount received from cryptocurrency kiosks would likely be greater.  Furthermore, consolidation Bitcoin address #2 has only been active from February 27, 2025 through May 18, 2025 and has received and sent Bitcoin valued at approximately $2,162,613 USD in only eight deposits.  Case agents know this behavior is inconsistent with that of a typical lawful cryptocurrency user.

<u>FREEZING OF ChangeNOW FUNDS</u>

33.     On May 11, 2025, case agents were notified by ChangeNOW that the user of consolidation Bitcoin address #2 attempted five withdrawals of exactly 1.0 BTC each (valued at the time $104,781 USD each) at the exact same time, down to the second, to the following ChangeNOW **TARGET ADDRESSES**:

    **a.  35yB1iLRnuYVrJWYaZFk7DuvSjxgx3qvJV**

    **b.  3Py8onX89WJM3fhKM4FcayKn9Hnt8uyiYT**

    **c.  34miQvY6azsdhSZCcabCD1AomXpefim2j2**

    **d.  34YMPXKP9oxSyg8n5Zos2e7EdXGU3DjrmK**

    **e.  3AQWTq67e276zyR7bpVjFLM3oWwBRzS5fX**

34.     Case agents further learned from ChangeNOW that the user of the consolidation Bitcoin address #2 attempted to swap all 5.0 BTC through the five transactions to Tether (USDT) and deposit into Tron address TUD8EuZmQES1icx8DC3YwXexAkoJuLk7fS.  Case agents recognize this behavior as a common money laundering technique.  All 5.0 BTC were on deposit in the consolidation address #2.  The scammer could have transferred all of it in one transaction to TUD8EuZmQES1icx8DC3YwXexAkoJuLk7fS, but instead, chose to split it up into five transactions at the exact same time and send to the same destination address.  The splitting up and rejoining of illicit funds is commonly done by money launderers to make it more difficult for law enforcement to follow the flow of the cryptocurrency, and as a result, better protect the ill-gotten gains.  If law enforcement was able to stop one transaction, the scammer would still successfully complete the other four transactions.  In this instance, case agents froze all 5.0 BTC totaling approximately $523,905 USD.  Furthermore, money launderers overwhelmingly choose to launder USDT, known as a Stablecoin because the value does not fluctuate, and to transact the USDT on the Tron blockchain due to fewer regulations and lower fees.  Finally, the user who attempted all five transactions at the same time was utilizing IP address 103.79.252.65 which is based out of Panaji, India.  Case agents believe the consolidation address #2 and all five ChangeNOW **TARGET ADDRESSES** were being used to launder stolen cryptocurrency.

35.     On May 18, 2025, the scammer transferred the remaining 1.79773359 BTC ($186,142 USD) from the consolidation address #2 to a newly created Bitcoin address.  The scammer then split those Bitcoin up, likely as test transactions, and sent all the Bitcoin to ChangeNOW.  These Bitcoin were not frozen as the target(s) avoided the alert placed on the consolidation address #2 by moving the Bitcoin to a new address just prior to sending to ChangeNOW.  All of these Bitcoin were also

swapped to USDT on the Tron blockchain. Case agents believe the target(s) changed the flow of swapping stolen cryptocurrency because of the recently frozen 5.0 BTC.

36.     Case agents believed all or at least the majority of the frozen 5.0 BTC are stolen from multiple victims. Case agents began communicating with three cryptocurrency kiosk companies and accessing law enforcement databases to attempt to identify other victims. Case agents identified many victims whose stolen cryptocurrency was determined to be contained within the frozen 5.0 BTC. Case agents also identified multiple victims who are believed to have had cryptocurrency stolen from the same criminal organization, but the cryptocurrency is likely not contained within the frozen 5.0 BTC. These victims were identified due to their circumstances being identical as other victims such as the same name of the purported FTC Agent, the same phone number being used by the scammer, or the same Bitcoin address(es) being used. As a result, it is believed this criminal organization victimized all of the following victims, and more victims are yet to be identified.

<u>KANSAS CITY, MISSOURI VICTIM</u>

37.     On May 1, 2025, Kansas City, Missouri victim, D.C., reported being scammed by a purported FTC Investigator using phone number (202) 474-4303. D.C. was informed that her bank account was used to launder money. D.C. was directed to withdraw $25,000 from her bank account and transfer it as Bitcoin to protect herself from prosecution. D.C. attempted to withdraw $25,000, but her bank only allowed her to withdraw $14,900. On April 28, 2025, D.C. deposited the $14,900 into an Athena Bitcoin kiosk to purchase Bitcoin. After the transaction fees were retained by Athena Bitcoin, a total of 0.11001098 BTC ($10,454.00) was transferred to Bitcoin address bc1qlazfekax02z3plvlakm4t9uz3v8vur3djpjq52, as directed by the scammer. The Bitcoin took two more hops and on May 1, 2025, the Bitcoin was deposited into consolidation Bitcoin address #2. This victim's funds are now contained within the frozen 5.0 BTC being held by ChangeNOW.

14

## MEDIA, PENNSYLVANIA VICTIM

38.     On June 12, 2025, Media, Pennsylvania victim, R.F., reported being scammed by a purported FTC Agent.  R.F. received an email purportedly from PayPal and advised about a fraudulent transaction.  R.F. called the phone number in the email and PayPal forwarded R.F. to a purported FTC Agent.  This agent directed R.F. to move his money to keep it secure.  This included buying $42,000 in gift cards and $10,000 in Bitcoin.  On February 22, 2025, R.F. deposited the $10,000 into an Athena Bitcoin kiosk to purchase Bitcoin.  After the transaction fees were retained by Athena Bitcoin, a total of 0.07380746 BTC ($7,131.00) was transferred to Bitcoin address bc1q9050052mxlynzvgrmuehk6zhvuuwqmx94tudk3, as directed by the scammer.  The Bitcoin took three more hops combining with other identified stolen funds, and on May 11, 2025, the Bitcoin was deposited into consolidation Bitcoin address #2.  This victim's funds are now contained within the frozen 5.0 BTC being held by ChangeNOW.

## ROCHESTER, NEW HAMPSHIRE VICTIM

39.     On February 18, 2025, Rochester, New Hampshire victim, H.R., reported being scammed by a purported FTC Agent "Rebecca Slaughter" using phone number (202) 988-2616.  H.R. received an email indicating her PayPal account was used without her consent.  She called the phone number in the email and was directed to the purported FTC Agent who said they needed to protect H.R.'s money in her bank account and credit union account.  H.R. was directed to leave her cell phone with an open line for the FTC Agent to listen because they suspected a bank employee could not be trusted.  Between the victim's bank and credit union, she withdrew approximately $94,650 which was all sent to Bitcoin address bc1qn0mcp7nr627dpt929cvfy2z2gk3xrt0pamk4e3 in seven transactions. Between February 10, 2025 and February 18, 2025, H.R. deposited the $94,650 into Coinhub, Bitcoin Depot, and Byte Federal cryptocurrency kiosks to purchase Bitcoin.  After the

15

transaction fees were retained by the kiosk companies, a total of 0.720456 BTC ($70,079) was transferred via seven transactions to BTC address bc1qn0mcp7nr627dpt929cvfy2z2gk3xrt0pamk4e3, as directed by the scammer. The Bitcoin took three more hops combining with other identified stolen funds, and on May 11, 2025, the Bitcoin was deposited into consolidation Bitcoin address #2. This victim's funds are now contained within the frozen 5.0 BTC being held by ChangeNOW.

## TRENTON, MICHIGAN VICTIM

40.     On May 30, 2025, Trenton, Michigan victim, B.K., reported being scammed by a purported FTC Investigator or IRS Investigator. B.K. received multiple emails regarding purchases of goods and services she never purchased. On February 14, 2025, B.K. called a phone number in one of the emails indicating she had purchased pornography and ended up speaking with an FTC Investigator. This purported investigator directed B.K. to withdraw $14,000 from her bank account and transfer the funds as Bitcoin. On February 14, 2025, B.K. deposited the $14,000 into an Athena Bitcoin kiosk in Southgate, Michigan to purchase Bitcoin. After the transaction fees were retained by Athena Bitcoin, a total of 0.10328366 BTC ($10,038) was transferred via two transactions to Bitcoin address bc1qrl24qz8tzj78qcdmxvn52872jskuug0djn0aru, as directed by the scammer. The Bitcoin took three more hops combining with other identified stolen funds, and on May 11, 2025, the Bitcoin was deposited into consolidation Bitcoin address #2. This victim's funds are now contained within the frozen 5.0 BTC being held by ChangeNOW.

## BROWARD COUNTY, FLORIDA VICTIM

41.     Broward County, Florida victim, T.H., reported being scammed by purported FTC Agents on February 12, 2025. T.H. received an email purportedly from PayPal about a fraudulent transaction. T.H. called the phone number listed in the email and was transferred to purported FTC

agents who said T.H. was under investigation for money laundering in multiple states and countries. They coerced T.H. into withdrawing $25,000 from her bank account. On February 12, 2025, B.K. deposited a total of $25,200 into a Coinhub kiosk in Dania, Florida to purchase Bitcoin. After the transaction fees were retained by Coinhub, a total of 0.19558 BTC ($19,141) was transferred via three transactions to Bitcoin address bc1qrl24qz8tzj78qcdmxvn52872jskuug0djn0aru, as directed by the scammer. The Bitcoin took three more hops combining with other identified stolen funds, and on May 11, 2025, the Bitcoin was deposited into consolidation Bitcoin address #2. This victim's funds are now contained within the frozen 5.0 BTC being held by ChangeNOW.

<u>BLISSFIELD, MICHIGAN VICTIM</u>

42. On May 30, 2025, Blissfield, Michigan victim, K.N., reported being scammed by a purported FBI Agent. K.N. received a PayPal email about a fraudulent transaction. K.N. called the phone number in the email and the PayPal employee forwarded K.N. to the purported federal agent. This agent claimed evidence existed implicating K.N. was involved in drug trafficking and K.N. was threatened not to tell anyone. This purported investigator directed K.N. to withdraw $20,000 from her bank account and transfer the funds as Bitcoin. K.N. withdrew the funds early from a Certificate of Deposit (C.D.) which incurred an extra $900 penalty. On February 19, 2025, K.N. deposited $1,900 into an Athena Bitcoin kiosk in Michigan to purchase Bitcoin. After the transaction fees were retained by Athena Bitcoin, a total of 0.01544273 BTC ($1,487) was transferred via one transaction to Bitcoin address bc1q7v92nvn03xxml225jtjlsuhaz0q5236adwps6t, as directed by the scammer. The Bitcoin took three more hops combining with other identified stolen funds, and on May 11, 2025, the Bitcoin was deposited into consolidation Bitcoin address #2. This victim's funds are now contained within the frozen 5.0 BTC being held by ChangeNOW.

17

## LONGVIEW, TEXAS VICTIM

43.     On January 17, 2025, Longview, Texas victim, J.H., reported being scammed by a purported FTC Investigator Rebecca Slaughter. J.H. received an email from Sam's Club about a fraudulent transaction. J.H. called the phone number listed in the email and she believed she was communicating with her credit card company. J.H. was then referred to purported FTC Agent Rebecca Slaughter using phone number (202) 988-2616 who said J.H. was a victim of identity theft and her bank was playing an active role in the crime so they cannot be trusted. J.H. was directed to withdraw money from her bank account and transfer it to a cryptocurrency address to keep it secure. J.H. withdrew $29,997 from her bank account. On January 15, 2025 and January 16, 2025, J.H. deposited the $29,997 into a Coinhub kiosk to purchase Bitcoin. After the transaction fees were retained by Coinhub, a total of 0.22364985 BTC ($22,427) was transferred via two transactions to Bitcoin address bc1qd4nvtr6kjpmy2dpjdw386m2p73tcdh863xqtfm, as directed by the scammer. The Bitcoin took multiple hops with the majority of it being deposited into Wasabi which is a mixing service. This Bitcoin cannot be linked to other identified target addresses, but a small portion of 0.00012326 BTC ($12) was combined with other identified stolen funds and transferred to the same consolidation Bitcoin address #2. This victim's funds 0.00012326 BTC ($12) are now contained within the frozen 5.0 BTC being held by ChangeNOW.

## VIENNA, GEORGIA VICTIM

44.     On March 19, 2025, Vienna, Georgia victim, B.K., reported being scammed. B.K. received an email about a fraudulent PayPal transaction. B.K. called a phone number in the email and was then transferred to another unnamed person. The scammers used phone numbers (202) 992-8740 and (202) 780-4155. B.K. believed she transferred about $70,000, via gift cards and Bitcoin. Between February 19, 2025 and February 26, 2025, B.K. deposited $75,000 into an Athena Bitcoin

kiosk in Georgia to purchase Bitcoin. After the transaction fees were retained by Athena Bitcoin, a total of 0.57702808 BTC ($54,798) was transferred via six transactions to Bitcoin address bc1qazqfgpqwulyk70l6jmkhdl5jmagchhspynurna, as directed by the scammer. The Bitcoin took three more hops combining with other identified stolen funds, and on May 11, 2025, the Bitcoin was deposited into consolidation Bitcoin address #2. This victim's funds are now contained within the frozen 5.0 BTC being held by ChangeNOW.

<u>SCHWENKSVILLE, PENNSYLVANIA VICTIM</u>

45.     On June 3, 2025, Schwenksville, Pennsylvania victim, E.J., reported being scammed by a purported FTC Agent. E.J. received a phone call on April 8, 2025 from purported FTC Agent Marshall Cooper using phone number (202)753-7592. This purported agent said that E.J. was a victim of identity theft. E.J. was directed to transfer Bitcoin, buy gift cards, and open four bank accounts depositing a total of $150,000. E.J. bought an unknown quantity of gift cards and did open four bank accounts and deposit a total of $150,000. E.J. eventually closed the bank accounts and recovered the $150,000. Between April 8, 2025 and May 29, 2025, E.J. conducted fourteen Bitcoin transactions via Athena Bitcoin, Bitcoin Depot, and Coinhub kiosks. During this time period, E.J. deposited approximately $177,790 into the fourteen cryptocurrency kiosks to purchase Bitcoin. After the transaction fees were retained by Athena Bitcoin, Bitcoin Depot, and Coinhub, a total of 1.3940046 BTC ($128,041) was transferred via fourteen transactions to Bitcoin address bc1qvsguqpfpphplt5d67q8g4ndzj9fa2werq7adt0                                    (Athena), bc1qv7kw9u4f3y6jrn6mva7u9yy4ltwmyqtp08zjjt              (Bitcoin              Depot),              and bc1q488kz655g562z9trapp7d2kyxmwxqxzqjdt289 (Coinhub), as directed by the scammer. On May 1, 2025, a portion sent from Bitcoin Depot, 0.0729004 BTC ($6,927), was deposited into consolidation Bitcoin address #2. This victim's funds are now contained within the frozen 5.0 BTC

19

being held by ChangeNOW.  The remaining 1.3211042 BTC ($121,114) was combined with other identified stolen funds in Bitcoin address 1M5Fmhfp3xTy3q2iuRzaF2b7nG1cfMgC5C (consolidation Bitcoin address #1) before being transferred to ChangeNOW.  Although these remaining stolen funds are not contained within the frozen 5.0 BTC, these Bitcoin were also stolen by the same criminal organization.

SALEM, MASSACHUSETTS VICTIM

46.     On June 14, 2025, Salem, Massachusetts victim, M.F., spoke with case agents.  Case agents noted that Athena Bitcoin contacted M.F. due to frequent large dollar amount transactions.  At that time, M.F. reported she was using cryptocurrency kiosks to purchase Bitcoin and transfer the Bitcoin to an investment website.  M.F. insisted she did not need help and believed the investment website was legitimate.  Case agents next made telephone contact with M.F. because M.F.'s Bitcoin was not sent to any investment account.  Instead, the victim's Bitcoin was commingled with other stolen funds and some of M.F.'s Bitcoin is included in the frozen 5 BTC.  M.F. appeared to be ashamed and embarrassed because she worked in the traditional financial and investing sector for decades.  M.F. advised she did not wish to speak with case agents or local investigators any longer. M.F. implied she was actively transferring Bitcoin to the scammer for a purported investment until case agents contacted her on June 14, 2025.  It was explained to M.F. that case agents froze a portion of her funds, but M.F. wishes to have no further contact with U.S. authorities at this time.  According to Athena Bitcoin records, M.F. made six deposits into Athena Bitcoin kiosks between March 18, 2025 and May 9, 2025 for a total of $124,000 to purchase Bitcoin.  After the transaction fees were retained by Athena Bitcoin, a total of 0.96036166 BTC ($86,833) was transferred via six transactions to Bitcoin address bc1qpe6akhwaugeju7jsjg9c2kf83nud0ddthryuj8, as directed by the scammer.  A total of 0.269446 BTC ($27,802) took several more hops combining with other identified stolen funds

20

(including Kenosha victim), and on May 10, 2025, the Bitcoin was deposited into consolidation Bitcoin address #2. This victim's 0.269446 BTC is now contained within the frozen 5.0 BTC being held by ChangeNOW.

47. Case agents know that M.F. transferred additional funds, but M.F. was too ashamed to provide further details. Based on the overall activity in Bitcoin address bc1qpe6akhwaugeju7jsjg9c2kf83nud0ddthryuj8, used to receive M.F. funds, case agents believe that M.F. more accurately transferred 2.803 BTC ($259,049) between March 4, 2025 and June 10, 2025. Case agents did not use these additional figures due to lack of cooperation from M.F.

48. Case agents identified many other victims who had funds stolen by the same criminal organization but whose funds may not be contained within the frozen 5.0 BTC. This was determined by tracing stolen cryptocurrency through some of the same Bitcoin addresses used for laundering stolen funds by this criminal organization and because the circumstances surrounding the scam were identical or similar enough such as the fictitious name of the purported FTC agent or a phone number used by the scammer.

<u>WOODSTOCK, GEORGIA VICTIM</u>

49. On February 26, 2025, Woodstock, Georgia victim, Z.K., reported being scammed by a purported federal agent. Z.K. received an email on February 23, 2025, purportedly from PayPal about a fraudulent transaction. Z.K. called phone number (404) 819-2728 listed in the email and was forwarded to purported OIG federal agent, Peter Garcia. This purported agent directed Z.K. to withdraw $30,000 from his bank account and transfer the funds as Bitcoin and gifts cards. On February 24, 2025 and February 25, 2025, Z.K. made three deposits totaling $24,000 into an Athena Bitcoin kiosk in Woodstock, Georgia to purchase Bitcoin. After the transaction fees were retained by Athena Bitcoin, a total of 0.19318728 BTC ($17,952) was transferred via three transactions to

21

Bitcoin address bc1q0rknj24usa5svrw7tvdw3salyzfgrank8qqz9f, as directed by the scammer. The stolen Bitcoin took three more hops combining with other identified stolen funds in consolidation Bitcoin address #1 before being transferred to ChangeNOW. Although these stolen funds are not contained within the frozen 5.0 BTC, Z.K. was victimized by the same criminal organization.

CHICAGO, ILLINOIS VICTIM

50. On April 8, 2025, Chicago, Illinois victim, C.R., reported being scammed by a purported FTC Agent. C.R. received an email about fraudulent Norton Virus charges on multiple accounts. C.R. called a phone number in the email and was directed to purported FTC Agent Melissa Holyoak using phone numbers (202) 601-6300 and (202) 988-2616. This purported agent said that C.R. was suspected of laundering money in multiple countries and needed to withdraw $28,000 from her bank account and transfer the funds as Bitcoin. On April 7, 2025, C.R. deposited $27,580 into a Coinhub kiosk in Chicago, Illinois to purchase Bitcoin. After the transaction fees were retained by Coinhub, a total of 0.26151276 BTC ($20,895) was transferred via two transactions to Bitcoin address bc1qstjm2m9ugz9gf7mrax6fdk8tfa9petl4k308gj, as directed by the scammer. The stolen Bitcoin took three more hops combining with other identified stolen funds in consolidation Bitcoin address #1 before being transferred to ChangeNOW. Although these stolen funds are not contained within the frozen 5.0 BTC, C.R. was victimized by the same criminal organization.

STERLING, VIRGINIA VICTIM

51. On March 17, 2025, Sterling, Virginia victim, T.G., reported being scammed by a purported FTC Agent. T.G. received an email about a fraudulent PayPal transaction. T.G. called the phone number in the email and was forwarded to a purported Bank of America employee. This Bank of America employee then forwarded T.G. to purported FTC Agent David Black using phone number (202) 750-2504. T.G. was informed that she needed to withdraw her funds from her bank, not tell

22

the bank staff because they were involved in the scam, and send her funds, via Bitcoin to a government wallet to keep it safe. On March 17, 2025, T.G. deposited $19,900 into an Athena Bitcoin kiosk in Leesburg, Virginia to purchase Bitcoin. After the transaction fees were retained by Athena Bitcoin, a total of 0.16917721 BTC ($14,214) was transferred via one transaction to Bitcoin address bc1qxru5523jd5m7vdry8vqpwpg6nu4y4xt747zl2w, as directed by the scammer. The stolen Bitcoin took five more hops combining with other identified stolen funds in consolidation Bitcoin address #1 before being transferred to ChangeNOW. Although these stolen funds are not contained within the frozen 5.0 BTC, T.G. was victimized by the same criminal organization.

## FORT MYERS, FLORIDA VICTIM

52.     Fort Myers, Florida victim, P.G., reported to Athena Bitcoin being scammed by a purported FTC Agent after speaking to someone purporting to be from P.G.'s bank. Case agents have attempted contact with P.G. by phone, email, and in-person with no response. On March 4, 2025, P.G. deposited $14,000 into an Athena Bitcoin kiosk to purchase Bitcoin. After the transaction fees were retained by Athena Bitcoin, a total of 0.11728136 BTC ($10,270) was transferred via one transaction to Bitcoin address bc1q304vk2h0gl9y04ec6pfh4mwvn9k9eqxr3y4cct. The Bitcoin took three more hops combining with other identified stolen funds in consolidation Bitcoin address #1 before being transferred to ChangeNOW. Although these stolen funds are not contained within the frozen 5.0 BTC, P.G. was victimized by the same criminal organization. Blockchain analysis revealed another likely deposit by P.G., via Bitcoin Depot, but this cannot be confirmed without cooperation from P.G.

## NEW YORK, NEW YORK VICTIM

53.     On April 21, 2025, New York, New York victim, H.S., reported being scammed by an unknown individual who repeatedly called him. H.S. suffers from significant memory loss. H.S.

23

was informed he was a victim of fraud and needed to secure his money in Bitcoin and gift cards. H.S. had $34,500 stolen as a result of this deception. On April 19, 2025, H.S. deposited $25,000 into an Athena Bitcoin kiosk in Manhattan, New York to purchase Bitcoin. After the transaction fees were retained by Athena Bitcoin, a total of 0.20268143 BTC ($17,278) was transferred via one transaction to Bitcoin address bc1qmpag0rm3qhvnu3dwj68lum5ndd3tfjcye433dc, as directed by the scammer. The stolen Bitcoin took two more hops combining with other identified stolen funds in consolidation Bitcoin address #1 before being transferred to ChangeNOW. Although these stolen funds are not contained within the frozen 5.0 BTC, H.S. was victimized by the same criminal organization.

### VERNON, CONNECTICUT VICTIM

54.     On March 14, 2025, Vernon, Connecticut victim, V.D., reported being scammed by a purported FTC Agent. V.D. received an email about a fraudulent PayPal transaction. V.D. called the phone number in the email and was forwarded to multiple employees before finally speaking with purported FTC Agent David Robbins with phone number (202) 750-4168. Over several days, V.D. was directed to withdraw money from her bank account. She was directed to and complied with buying Bitcoin, buying gift cards, mailing U.S. currency in a parcel to an address in California, and handing U.S. currency to a woman who arrived at her house. In total, V.D. was deceived into transferring approximately $54,700. On March 13, 2025, V.D. deposited $1,950 into an Athena Bitcoin kiosk in either Vernon, CT or Springfield, MA to purchase Bitcoin. After the transaction fees were retained by Athena Bitcoin, a total of 0.01933935 BTC ($1,618) was transferred via one transaction to Bitcoin address bc1qg08px2ph6tfy0xtmapcaln48fh60xkjg7mn8fw, as directed by the scammer. The stolen BTC took five more hops combining with other identified stolen funds in consolidation Bitcoin address #1 before being transferred to ChangeNOW. Although these stolen funds are not contained within the frozen 5.0 BTC, V.D. was victimized by the same criminal

organization.

## BURNIE, MARYLAND VICTIM

55.     Case agents reviewed Athena Bitcoin records and identified a suspected victim, but case agents have been unable to make contact with suspected Burnie, Maryland victim, T.C.  On March 12, 2025, T.C. deposited $1,980 into an Athena Bitcoin kiosk in or near Burnie, Maryland to purchase Bitcoin.  After the transaction fee was retained by Athena Bitcoin, a total of 0.01898173 BTC ($1,588) was transferred via one transaction to Bitcoin address bc1qg08px2ph6tfy0xtmapcaln48fh60xkjg7mn8fw.  This same Bitcoin address also directly received stolen Bitcoin from Vernon, Connecticut victim, V.D.  The stolen Bitcoin sent by T.C. took five more hops combining with other identified stolen funds in consolidation Bitcoin address #1 before being transferred to ChangeNOW.  Although these stolen funds are not contained within the frozen 5.0 BTC, T.C. was victimized by the same criminal organization.

## CHANDLER, ARIZONA VICTIMS

56.     Chandler, Arizona victim, L.T., reported she and her significant other, B.S. were scammed by a purported FTC Agent.  L.T. conducted transactions in her name and her significant other's name, B.S.  On March 17, 2025, L.T. received an email about her social security number being used without her consent.  L.T. contacted phone number (202) 990-7898 and spoke with a purported FTC agent.  L.T. was directed to withdraw all their funds from their bank accounts, tell the bank staff that the funds were for a property purchase, and to transfer the funds as Bitcoin to a federally secure cryptocurrency wallet.  Between March 17, 2025 and March 27, 2025, L.T. and B.S. deposited $149,600 into Athena Bitcoin and Bitcoin Depot kiosks in or near Chandler, Arizona to purchase Bitcoin.  After the transaction fees were retained by Athena Bitcoin and Bitcoin Depot, a total of 1.21916272 BTC ($105,450) was transferred via six transactions to Bitcoin addresses

25

bc1qs3l2fk2f72dds5rhganzl85j3yseyxugmlg9sh (Athena and Bitcoin Depot), bc1q0wsth029r6gx2zm7j8s8fjc6cv87qest8sxhuv (Athena), and bc1qewy7tavxmy49g75l3vpysrxqv7ujh9cgupq6qy (Bitcoin Depot), as directed by the scammer. Some of the stolen Bitcoin took multiple hops combining with other identified stolen funds in consolidation Bitcoin address #1 before being sent to ChangeNOW. The remaining stolen Bitcoin took multiple hops combining with other identified stolen funds in Bitcoin address 1MxtzdzTgoo35Tjy1HyqVfvwh15FJApFvy before being sent to ChangeNOW. Although these stolen funds are not contained within the frozen 5.0 BTC, L.T. and B.S. were victimized by the same criminal organization.

<u>TULSA, OKLAHOMA VICTIM</u>

57. On April 3, 2025, Tulsa, Oklahoma victim, M.L., reported being scammed by purported FTC Agent Rebecca Slaughter. M.L. received an email about a fraudulent PayPal transaction. M.L. called the phone number in the email and was forwarded to FTC Agent Rebecca Slaughter using phone number (202) 988-2126. M.L. was told her personal identifying information was compromised so she needed to withdraw her money from all bank accounts and deposit into Bitcoin wallets. She was directed to and complied with buying Bitcoin from Athena Bitcoin, Bitcoin Depot, Byte Federal, and Coinhub kiosks in or near Tulsa and Muskogee, Oklahoma. Between March 19, 2025 and March 31, 2025, M.L. deposited approximately $150,000 into cryptocurrency kiosks, transferring the Bitcoin to Bitcoin address bc1qtjgkzshzqgew7a55x00fxmhqh72ycrel6e6xny. After the transaction fees were retained by each kiosk company, a total of 1.39587122 BTC ($119,685) was transferred via ten transactions to Bitcoin address bc1qtjgkzshzqgew7a55x00fxmhqh72ycrel6e6xny, as directed by the scammer. The stolen Bitcoin took multiple hops in different paths, combined with other identified stolen funds in consolidation

26

Bitcoin address #1, and were transferred to ChangeNOW. Although these stolen funds are not contained within the frozen 5.0 BTC, M.L. was victimized by the same criminal organization.

<u>BUHL, IDAHO VICTIM</u>

58.     On March 18, 2025, Buhl, Idaho victim, K.E., reported being scammed by a purported FTC Agent. K.E. received an email about a fraudulent PayPal transaction. K.E. called the phone number in the email and was forwarded to her purported bank who then forwarded her to purported FTC Agent Rebecca Slaughter with phone number (202) 988-2616. K.E. was directed to withdraw funds from her bank four times between March 12, 2025 and March 17, 2025. K.E. purchased gift cards, Bitcoin, and obtained a Cashier's check. K.E. withdrew approximately $85,000 and transferred it to the scammer via various means. On March 12, 2025 and March 14, 2025, K.E. made two deposits totaling $43,760 into Bitcoin Depot kiosks in or near Buhl, Idaho to purchase Bitcoin. After the transaction fees were retained by Bitcoin Depot, a total of 0.36662719 ($30,791) was transferred via two transactions to Bitcoin address bc1qvp3d7mjxnyd0mhad85whdka2uw0x5ngzn6j6wx, as directed by the scammer. The stolen Bitcoin took five more hops combining with other identified stolen funds in consolidation Bitcoin address #1, and were transferred to ChangeNOW. Although these stolen funds are not contained within the frozen 5.0 BTC, K.E. was victimized by the same criminal organization.

<u>BENSALEM, PENNSYLVANIA VICTIM</u>

59.     On March 27, 2025, Bensalem, Pennsylvania victim, W.F., reported being scammed by a purported FTC Agent. W.F. received a phone call about fraudulent PayPal transactions from purported FTC Agent Melissa Holyoak with phone numbers (202) 988-2616 and (202) 601-6300. W.F. was directed to withdraw funds from his bank and transfer it via Bitcoin to maintain the security of his funds. Between March 24, 2025 and March 26, 2025, W.F. made four deposits totaling $50,560

27

into Athena Bitcoin kiosks in and near Bensalem, Pennsylvania to purchase Bitcoin. After the transaction fees were retained by Athena Bitcoin, a total of 0.41128885 ($35,981) was transferred via four transactions to Bitcoin address bc1q7lkn4j27rjyel2lzh54hhhynz8gs8u0ekx3rjw, as directed by the scammer. The stolen Bitcoin took multiple more hops combining with other identified stolen funds in consolidation Bitcoin address #1, and were transferred to ChangeNOW. Although these stolen funds are not contained within the frozen 5.0 BTC, W.F. was victimized by the same criminal organization.

## ROMULUS, MICHIGAN VICTIM

60. On March 6, 2025, Romulus, Michigan victim, M.J., reported being scammed by a purported FTC Agent. M.J. received an email about a fraudulent PayPal transaction on or about March 5, 2025. M.J. called the phone number in the email and was forwarded to his purported bank who then forwarded him to purported FTC Agent Rebecca Slaughter using phone number (202) 988-2616. M.J. was directed to withdraw all funds from his bank accounts and transfer to a Bitcoin address using a Bitcoin kiosk to secure the funds. M.J. withdrew funds and transferred it to the scammer via Coinhub kiosk. On March 5, 2025, M.J. made two deposits totaling approximately $33,000 into Coinhub kiosks in Woodhaven, Michigan to purchase Bitcoin. After the transaction fees were retained by Coinhub, a total of 0.28109324 ($25,448) was transferred via two transactions to Bitcoin address bc1qpm4d0ztphpq24ly8y4ju7p5qu488g7z07cyhs7, as directed by the scammer. The stolen Bitcoin took multiple hops combining with other identified stolen funds in consolidation Bitcoin address #1, and were transferred to ChangeNOW. Although these stolen funds are not contained within the frozen 5.0 BTC, M.J. was victimized by the same criminal organization.

61.     On March 9, 2025, Brevard County, Florida victim, B.B., reported being scammed by a purported FTC Agent.  B.B. received a phone call, purportedly from his PNC Bank, reporting his personal information was involved in a fraudulent transaction.  B.B. was forwarded to purported FTC Agent Rebecca Slaughter.  This purported agent said that B.B. needed to protect his funds so he was directed to withdraw as much money as he could and transfer it to a government cryptocurrency wallet.  On February 25, 2025, B.B. deposited $8,000 into an Athena Bitcoin kiosk in Palm Bay, Florida to purchase Bitcoin.  After the transaction fees were retained by Athena Bitcoin, a total of 0.06566222 BTC ($6,017) was transferred via one transaction to Bitcoin address bc1qlz2tkfn4j9u8l9t2zcf7ejuvlhqpj4hxy00m7n, as directed by the scammer.  The stolen Bitcoin took two more hops, combining with other identified stolen funds into a Wasabi BTC address bc1qr7fut40ma22qvw24k3ulx4942p77a0gz0m3vzg.  Wasabi is known as a "mixing service" which is a very sophisticated method of obfuscating illicit funds.  Although these stolen funds are not contained within the frozen 5.0 BTC, B.B. was victimized by the same criminal organization.

## COLBERT, GEORGIA VICTIM

62.     Case agents attempted telephone contact with Colbert, Georgia victim, K.H., multiple times unsuccessfully.  Case agents received records from Athena Bitcoin revealing that on March 27, 2025, K.H. deposited $39,800 into an Athena Bitcoin kiosk in or near Colbert, Georgia to purchase Bitcoin.  After the transaction fees were retained by Athena Bitcoin, a total of 0.32076649 BTC ($28,016) was transferred via one transaction to Bitcoin address bc1qp26eu3nqtu8vqzsxmrjgyx46z44axf4sq0xgf0, as directed by the scammer.  The stolen Bitcoin took three more hops, combining with other identified stolen Bitcoin in consolidation Bitcoin address #1 before being transferred to ChangeNOW.  Although these stolen funds are not contained within

29

the frozen 5.0 BTC, K.H. was victimized by the same criminal organization.

63.     Case agents know that the stolen Bitcoin from multiple victims is now contained in the frozen 5.0 BTC originating from Coinhub, Athena, and Bitcoin Depot kiosk companies.  Only Coinhub and Athena have provided case agents with records to date.  As a result, case agents believe additional victims' Bitcoin is contained within the 5.0 BTC which was sent from Bitcoin Depot and other kiosk companies.

64.     At this time, case agents have identified and confirmed stolen 2.34202719 BTC (current approximate value $269,333 USD) is currently contained within the frozen 5.0 BTC.  Case agents have confirmed another 7.2781795 BTC (current approximate value $836,990 USD) has been stolen by the same criminal organization and the vast majority also sent to ChangeNOW, similar in nature to the frozen 5.0 BTC.  Furthermore, case agents believe the 7.2781795 BTC is stolen by the same criminal organization because the same consolidation wallets were used, similar scam details were provided to the victims, and ChangeNOW was the means to launder nearly all the Bitcoin.

## CRYPTOCURRENCY TRACING SUMMARY

65. Case agents have conducted extensive blockchain analysis by tracing stolen Bitcoin from all the victims.  The majority of the stolen Bitcoin was first deposited into consolidation address #1.  A total of 5.0 BTC was transferred to consolidation address #2 from consolidation address #1.  Consolidation address #1 sent most if not all of the remaining Bitcoin directly to ChangeNOW to swap the cryptocurrency type in an attempt to obfuscate the funds.  Consolidation address #2 also received stolen Bitcoin through paths not via consolidation address #1. A total of 5.0 BTC, found to contain at least 2.34202719 BTC from identified victims, was then transferred in 1.0 BTC increments to the five **TARGET ADDRESSES**.  *See* Figure 1.

30



*Figure 1*

66.     Case agents know cryptocurrency is often times used for money laundering.  In this investigation, all of the victims' funds were sent from cryptocurrency kiosks and could have been sent directly to consolidation address #2 or even the five ChangeNOW **TARGET ADDRESSES.** Instead, the target(s) of the investigation directed the victims to send the funds to numerous addresses held by the target(s).  The target(s) decided to send quantities of the victim's funds through three

different paths but still eventually being deposited into consolidation address #2. The victims' stolen Bitcoin was commingled with Bitcoin stolen from the other victims. Case agents know that using multiple addresses, splitting the funds up, and commingling stolen funds with other funds is done to obfuscate the origin of funds and make it more difficult for case agents to follow. Furthermore, the target(s) swapped stolen Bitcoin to Tether (USDT) onto the Tron Blockchain, almost solely through ChangeNOW in excess of $12 million. This is exactly what the target(s) attempted to do with the 5.0 BTC which was frozen by ChangeNOW in the five **TARGET ADDRESSES**. The target(s) could have transferred all 5.0 BTC to ChangeNOW in one transaction, but instead the target(s) decided to conduct five 1.0 BTC transfers at the exact same time. Furthermore, the target(s) attempted to transfer all 5.0 BTC to the same Tron address TUD8EuZmQES1icx8DC3YwXexAkoJuLk7fS using the same IP address 103.79.252.65. ChangeNOW does not identify its users. Case agents know this is another common method to disguise the origin of funds and make it more difficult for case agents to recover the cryptocurrency.

67. Case agents know that co-conspirators of fraudulent investment scams and money launderers often times prefer to use cryptocurrency due to less regulation by authorities and the difficulty of authorities to seize cryptocurrency. All cryptocurrency addresses, to include the two consolidation addresses, are part of a noncustodial unhosted wallet(s), which means the user only has control of the private key. Only the possessor of the private key can access the cryptocurrency. ChangeNOW generally cannot take custody of cryptocurrency transferred through their service due to users not being required to create wallets or identify themselves with ChangeNOW. In this instance, case agents asked ChangeNOW to restrain the cryptocurrency prior to the cryptocurrency even being transferred to ChangeNOW. As a result, ChangeNOW did restrain 1.0 BTC in each **TARGET ADDRESS** for a total of 5.0 BTC.

68.     Case agents know that money launderers prefer to use Stablecoins because they hold a consistent value.  The majority of cryptocurrency types have a value that is volatile, and criminals can lose money while the stolen funds are being transferred between addresses or being held in a cryptocurrency address such as the **TARGET ADDRESSES**.  Because a Stablecoin, such as USDT, will holds its value, Stablecoins are the preferred choice by criminals and/or money launderers.

69.     The five ChangeNOW **TARGET ADDRESSES** were never previously utilized before they received the stolen Bitcoin from this investigation.  The **TARGET ADDRESSES** are as follows:

   a. **35yB1iLRnuYVrJWYaZFk7DuvSjxgx3qvJV**    **1.0 Bitcoin (TARGET ADDRESS #1)**
   b. **3Py8onX89WJM3fhKM4FcayKn9Hnt8uyiYT**    **1.0 Bitcoin (TARGET ADDRESS #2)**
   c. **34miQvY6azsdhSZCcabCD1AomXpefim2j2**    **1.0 Bitcoin (TARGET ADDRESS #3)**
   d. **34YMPXKP9oxSyg8n5Zos2e7EdXGU3DjrmK**    **1.0 Bitcoin (TARGET ADDRESS #4)**
   e. **3AQWTq67e276zyR7bpVjFLM3oWwBRzS5fX**    **1.0 Bitcoin (TARGET ADDRESS #5)**

70.     Case agents received records from ChangeNOW revealing each **TARGET ADDRESS** holds exactly 0.9999835 BTC which would indicate there was an internal fee within ChangeNOW but no blockchain fee can be seen from blockchain analysis.  As a result, case agents are seeking a warrant to seize up to 1.0 BTC from each **TARGET ADDRESS** for a total of 5.0 BTC. The approximate value of 5.0 BTC at this time is $575,000 USD.

71.     On June 25, 2025, case agents communicated with ChangeNOW.  ChangeNOW advised that the Bitcoin is still frozen in the five **TARGET ADDRESSES** and will remain frozen until case agents provide a seizure warrant.  ChangeNOW reported they will comply with a seizure warrant, and case agents know from previous experience that ChangeNOW does comply with U.S.

33

authorities. ChangeNOW also advised that no one contacted them inquiring about the status of the frozen 5.0 BTC or why they have not received the funds. Case agents know this is indicative of illicit behavior because someone engaged in lawful activity would inquire about not having access to their cryptocurrency worth approximately $575,000 USD.

<u>**CONCLUSION**</u>

72.     Based upon all of the foregoing, there is probable cause to believe that the Bitcoin held in target addresses **35yB1iLRnuYVrJWYaZFk7DuvSjxgx3qvJV (TARGET ADDRESS #1)**, **3Py8onX89WJM3fhKM4FcayKn9Hnt8uyiYT          (TARGET          ADDRESS          #2)**, **34miQvY6azsdhSZCcabCD1AomXpefim2j2          (TARGET          ADDRESS          #3)**, **34YMPXKP9oxSyg8n5Zos2e7EdXGU3DjrmK          (TARGET          ADDRESS          #4)**,     and **3AQWTq67e276zyR7bpVjFLM3oWwBRzS5fX (TARGET ADDRESS #5)** is

   a.   Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses committed in violation of 18 U.S.C. § 1343, and therefore subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

   b.   Funds involved in, or traceable to funds involved in, money laundering offenses, committed in violation of 18 U.S.C. §§ 1956 and 1957, and therefore are subject to civil forfeiture under 18 U.S.C. §§ 981 (a)(1)(A) and 984, and subject to criminal forfeiture under 18 U.S.C. § 982(a)(1); and Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

73.     Title 18, United States Code, Section 1956 makes it unlawful, in part, to conduct a financial transaction, knowing that the property involved in the financial transaction represents the proceeds of some form of specified unlawful activity, knowing that the transaction is designed in whole or part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

74.     Likewise, Title 18, United States Code, Section 1960 makes it unlawful to engage in an unlicensed money transmitting business. An unlicensed money transmitting business is defined as one which affects interstate or foreign commerce in any manner or degree, is operated without an appropriate license in a state, whether or not the transmitter knew that the operation was required to be licensed, is not in compliance with the money transmitting business registration requirements under 31 U.S.C. § 5330, which requires that money transmitting businesses be registered with the Secretary of the Treasury, or otherwise involves the transportation or transmission of funds that are known by the transmitter to have been derived from a criminal offense, or are intended to be used to promote or support unlawful activity.

75.     Accordingly, I submit that there is probable cause to support the issuance of a warrant to civilly and criminally seize **all Bitcoin held in the five TARGET ADDRESSES maintained by ChangeNOW and further identified on Attachment A**, pursuant to Title 18, United States Code, Section 981(a)(1)(c)  (civil forfeiture of wire fraud proceeds); Title 18, United States Code, Section 981(a)(1)(A) (civil forfeiture of property involved in money laundering and unlicensed money transmitting); Title 18, United States Code, Section 981(a)(1)(c)  (criminal forfeiture of wire fraud proceeds); and Title 18, United States Code, Section 982(a)(1) (criminal forfeiture of property involved in money laundering and unlicensed money transmitting).

76.     The Court has authority to issue seizure warrants for property located outside the Eastern District of Wisconsin, pursuant to Title 18, United States Code, Section 981(b)(3). Section 981(b)(3) provides that a seizure warrant may be issued by a judicial officer in any district in which a forfeiture action may be filed under Title 28, United States Code, Section 1355(b), "and may be executed in any district in which the property is found. . . ." Title 18 U.S.C. § 981(b)(3). In turn, Title

35

28, United States Code, section 1355(b) provides that a forfeiture action may be brought in any district where any of the underlying acts or omissions occurred upon which the forfeiture based.

**ATTACHMENT A**

Pursuant to this warrant, ChangeNOW shall provide the law enforcement officer/agency serving this document with the equivalent amount of Bitcoin (BTC) tokens that are currently associated with the virtual currency addresses referenced below (*i.e.*, all items of value, including up to 1.0 BTC in each or associated with each of the five **TARGET ADDRESSES**). ChangeNOW shall effectuate this process by transferring the equivalent value of BTC tokens to a U.S. law enforcement-controlled virtual currency wallet. ChangeNOW shall provide reasonable assistance in implementing the terms of this seizure warrant and take no unreasonable action to frustrate their implementation.

TARGET ADDRESSES to Be Seized:

**a. 35yB1iLRnuYVrJWYaZFk7DuvSjxgx3qvJV**    **1.0 Bitcoin (TARGET ADDRESS #1)**

**b. 3Py8onX89WJM3fhKM4FcayKn9Hnt8uyiYT**    **1.0 Bitcoin (TARGET ADDRESS #2)**

**c. 34miQvY6azsdhSZCcabCD1AomXpefim2j2**    **1.0 Bitcoin (TARGET ADDRESS #3)**

**d. 34YMPXKP9oxSyg8n5Zos2e7EdXGU3DjrmK**    **1.0 Bitcoin (TARGET ADDRESS #4)**

**e. 3AQWTq67e276zyR7bpVjFLM3oWwBRzS5fX**    **1.0 Bitcoin (TARGET ADDRESS #5)**